20 So.2d 774

**SCRUGGS v. BEASON et al.**

7 Div. 808.

Supreme Court of Alabama.

Feb. 1, 1945.

Hood, Inzer, Martin & Suttle, of Gadsden, for appellant.

407

Jas. A. Embry and W. L. Acuff, both of Ashville, for appellees.

STAKELY, Justice.

This is an appeal from a final decree of the equity court enjoining J. D. Scruggs (appellant) from placing a fence and gate across a road. In the bill, filed by J. H. Beason and L. M. Bagett (appellees), the road is alleged to be a public road. Two questions are presented for our review, first, whether the appellees have such an interest in the alleged public road as to enable them to maintain the action and, second, whether the road is a public road. The first question is presented on demurrer to the bill, which was overruled by the court. The second question arises on the evidence. The witnesses were examined orally before the court.

On a hill about 600 feet north of Federal Highway No. 11 in St. Clair County, Alabama, is located a country graveyard, known as the Choat Graveyard. It had its beginning in the early part of the settlement in which it existed. There are about 120 graves in the graveyard, the date of the earliest one being 1868. From that time to the present, it has been used as a burying ground by the surrounding community, burials therein being made from time to time. On particular occasions the members of the community would meet to clear off the cemetery and keep it in order. It is connected with the Federal highway by the road in question, which offers the only means of ingress and egress to and from the graveyard. The fence and gate, the subject of the present controversy, were placed across the road at the entrance to the road from the Federal highway. Buried in the graveyard, among others, are the father, mother and two sons of J. H. Beason (one of the appellees). The father, mother and two brothers of L. M. Bagett (one of the appellees) are buried there. The complainants are householders and own land in the community. In addition to alleging that the road is a public road, the bill shows in substance the foregoing facts.

The obstruction of a public road is a public nuisance. Walls et al. v. Smith & Co. et al., 167 Ala. 138, 52 So. 320, 140 Am.St.Rep. 24; Weiss et al. v. Taylor et al., 144 Ala. 440, 39 So. 519. Generally a public nuisance gives no right of action to an individual, but must be abated by process instituted in the name of the state. An individual complaining of a public nuisance must show some special injury to himself different from the common injury to the public. Walls et al. v. Smith & Co. et al., supra; City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A.1918, 1020; McIntosh v. Moody, 228 Ala. 165,

153 So. 182; Louisville & N. R. Co. v. Higginbotham, 153 Ala. 334, 44 So. 872; § 1084, Title 7, Code of 1940.

■ It is clear, however, that appellees have such interest in the alleged public road which leads from the Federal highway to the cemetery as to give them the right to injunctive relief. Complainants are members of the community and have members of their families buried in a cemetery used for burial purposes by the community. Complainants, with other members of the community, care for the upkeep of the cemetery. The public road offers the only means of entry to and from the graveyard. A cemetery is a place not only for the burial of the dead, but for an expression of love and respect by the living for the dead. Hence there must be accorded to complainants not only the right of burial but also the right to visit, maintain and beautify the graves of relatives interred therein, without obstruction in the public road. Nelson v. Randolph, 222 Ill. 531, 78 N.E. 914; Mayo v. Schumer, Mo.App., 256 S.W. 549; 10 Am.Jur. p. 510; 10 Am.Jur. p. 514; 68 A.L.R. page 1293. See also Weiss et al. v. Taylor et al., supra. The court was not in error in overruling the demurrer to the bill.

Was the road leading from the Federal highway to the cemetery a public road? Appellant insists that whatever use was made of the roadway was permissive only. Tendencies of the evidence, in addition to the facts set forth above, showed in substance the following:

The road, according to the knowledge of living witnesses, had been open and used by the community to get to the cemetery for about sixty years. It was worked and kept up by the combined efforts of the people of the community. The property on each side of the road was originally owned by different persons, although now owned by the appellant. The road runs from the Federal highway a distance of about 300 feet to the foot of the hill on which the cemetery is located, then up the hill about 300 feet to the cemetery. The lands to the foot of the hill have been in cultivation as far back as the memory of the oldest witnesses goes. The oldest witnesses were seventy-odd years of age. Until the stock laws went into effect about thirty years ago, according to witnesses, there had been rail fences on both sides of the road from the Federal highway to the foot of the hill. The distance between the fences was twenty-three or twenty-four feet. There was a drainage ditch on each side of the road. The road was never laid out by the county or dedicated by legal proceedings. The lands to the foot of the hill were changed into pasture lands in about 1942.

■ There was evidence to sustain complainants' theory of the use of the roadway by the public generally, for a longer period than twenty years continuously and uninterruptedly without let or hindrance. Under our cases, this is sufficient to raise a presumption of dedication to public use by the owner.

"'As a general rule it seems now settled in this state that an open, defined roadway, in continuous use by the public as a highway, without let or hindrance, for a period of 20 years, becomes a public highway by prescription. With qualification as to wild, unused, or unclosed lands, a presumption of dedication or other appropriation to public use arises. The burden is on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession.'" Ritter v. Hewitt, 236 Ala. 205, 208, 181 So. 289, 291.

See also Locklin v. Tucker, 208 Ala. 155, 93 So. 896.

How does appellant seek to differentiate the situation in the case at bar so as to make the foregoing statement of principle inapplicable? The bases of difference may be stated as follows.

■ 1. It is contended that photographs introduced in evidence show the roadway to be a mere trail, without signs of user. The photographs show at best only a faintly visible, poorly kept roadway. But a highway may be public, though little travelled and though it may afford facilities for travel only to such persons as reside in the community and not useful to the public generally. Dunn & Lallande Bros. v. Gunn, 149 Ala. 583, 42 So. 686; Thrasher v. Burr et al., 202 Ala. 307, 80 So. 372. Here the use of the road was for the members of a small country community in going to and from infrequent burials in a small burying ground and in infrequent trips to and from the graveyard to keep it in some degree of order. "It is the character rather than the quantum of use that controls." Still et al. v. Lovelady, 218 Ala. 19, 117 So. 481.

2. It is claimed that the road until shortly before this suit extended two miles.

beyond the cemetery to a church known as Union Church, and that such extension, together with that part of the roadway from the foot of the hill to the graveyard, runs through wild and unreclaimed lands Hence it is insisted that there is no presumption of dedication. Newell v. Dempsey, 219 Ala. 634, 122 So. 881.

But there is proof tending to show that the road from the cemetery to Union Church was a different or branch road from the roadway leading from the Federal highway to the cemetery. While there was cultivation of the land only to the foot of the hill on which the cemetery is located, there is testimony tending to show that the entire course of the roadway from the Federal highway to the cemetery was through reclaimed lands. The appellant's own testimony showed that he owned forty-five to forty-eight acres north of the Federal highway and which constituted the land around or about the cemetery. Of this acreage, twenty-six to thirty acres was cleared land and the balance in woods. There were tendencies of the evidence showing that wood from the wooded area was used for farming and domestic purposes. We do not consider that that part of appellant's property on the hill should be considered as unreclaimed lands separate and apart from his other lands. Ritter v. Hewitt, supra; Still et al. v. Lovelady et al., supra.

3. Conveyances constituting appellant's chain of title were introduced in evidence. They make no reference to the roadway. Hence it is argued that there is evidence to contradict the presumption of dedication to public use by the owner.

"As said in Steele v. Sullivan, 70 Ala. [589], 594, 'where the recorded deeds of the lands or lots, adjacent to a street or alley contain recitals or words of conveyance which repel the idea of a dedication, this is always a very strong fact to rebut the presumption arising from the use by the public.' And again, in Gage v. Mobile & O. R. Co., 84 Ala. 224, 226, 4 So. 415, 416, where an alley was shown to have been used by all who chose to pass through it going to a public wharf, but none of the grants in the claim of title indicated any recognition of the existence of the alley, it was said that—

" 'These deeds being of a solemn and deliberate character, and placed upon the public records, must be taken as so many affirmative declarations by the owners of the alley property in denial of the public right.' " Locklin v. Tucker, 208 Ala. 155, 93 So. 896, 898.

But while the conveyances make no reference to the roadway, they each refer to and recognize the existence of the Choat Graveyard by expressly excepting the Choat Graveyard from the operation of the conveyance. At the time of each conveyance the graveyard was surrounded by the property of the grantor and there was no access to the Federal highway except by the roadway.

"It is a universally established rule that where a tract of land is conveyed which is separated from the highway by other lands of the grantor, or which is surrounded by his lands or by his and those of third persons, there arises by implication in favor of the grantee a way of necessity across the premises of the grantor to the highway. The basis of this right is the presumption of a grant arising from the circumstances of the case." Hamby v. Stepleton, 221 Ala. 536, 130 So. 76, 77.

We do not consider that the recitals of the deeds, under the circumstances, repel the idea of a dedication and contradict its presumption, since a roadway was necessary for the use of the very property expressly referred to in the deed.

4. It is contended that there is no basis for the finding by the court as to the width of the road. The court found the width of the road to be not less than fifteen feet or seven and one-half feet on each side of the center line. The distance between the fences that once lined the lower part of the roadway was twenty-three or twenty-four feet. There was testimony tending to show that the road from the foot of the hill to the cemetery was kept "shrubbed off" to a width of twenty to twenty-two feet. Appellant testified that he measured the roadway and found it "all the way from 9 to 20 feet wide." "Slight deviations from the thread of the way, not amounting to a change thereof, will not defeat the establishment of the way by prescription." Noon v. Lollar, 203 Ala. 672, 85 So. 6, 7; Ritter v. Hewitt, supra. See Rees v. Dixon, 291 Ky. 379, 164 S.W. 2d 950, 143 A.L.R. page 1402.

In rendering its final decree, the court, among other things, in substance found that the road extended its entire length through reclaimed lands as contra-distinguished from wild or unreclaimed lands and had done so for more than twenty

410

years before the obstruction was placed in the road and that the road was a public road.

As stated, the witnesses were examined orally before the court. "We cannot say that the finding of the lower court was palpably wrong and so we follow the established rule that the judgment of the lower court will not be disturbed." Randolph v. Randolph, 245 Ala. 689, 18 So.2d 555, 560.

The decree of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS and FOSTER, JJ., concur.