**YOUNG et al. v. MEYER et al.**

Court of Appeals of Kentucky.

May 14, 1954.

Carl H. Ebert (of Ebert, Cook & Burke, Newport), for appellants.

M. Hargett (of Hargett & Hargett), Maysville, for appellees.

CLAY, Commissioner.

This suit was brought by appellees to enjoin appellants from interfering with the formers' use of a passway over the latters' farm. The relief prayed was granted by the Chancellor, who carefully analyzed the facts and the issues in an excellent opinion.

The adjoining farms of the two parties are located on the north side of state highway No. 10 not far from Brooksville and title is traced to a common source. In 1899, in a partition suit, the large farm of one J. C. Cline was divided into six tracts. When this division was made the court commissioners laid off on a partition plat a passway extending from highway No. 10 to the north boundary of the original farm. This passway is now on the land appellants acquired in 1937. Appellants dispute the right of appellees to use any part of this passway, but the crux of the controversy is the right of appellees to use an extension thereof which traverses appellants' land in a westerly direction to what is described as appellees' "North Field".

In 1903 appellees' predecessor in title acquired the farm which encompasses the "North Field" and lies immediately west of appellants' land, and he continued to live on this farm until his death in 1950. There is ample evidence to support the Chancellor's finding that a sufficiently defined passway leading from the road laid out by the commissioners on appellants' land to the "North Field" on appellees' land has existed since approximately the time the tract was purchased in 1903. This passway was used as a means of ingress and egress to the north-

ern part of the farm for the purpose of cultivating it. It was not used extensively and sometimes for a year or more at a time not used at all, depending upon whether or not crops were being raised on that part of the farm.

It is the contention of appellants that admitting the existence of the passway and its use from time to time, such user was always permissive and not under claim of right. On the other hand, appellees insist that the use of the passway was open, notorious and adverse and for such a long period of time that they have acquired an easement. While there is testimony indicating the use of this passway was on various occasions permissive (although some of this testimony was clearly incompetent because relating to transactions with a deceased person), there was also substantial evidence that it was under a claim of right. Witnesses testified that in farming the "North Field" for the owner they had always gone through appellants' land over a well-defined passway, and that they did this without permission.

It is claimed by appellants that in 1915 the use of the passway was stopped by their predecessor in title and that at least thereafter the use was permissive. However, subsequent developments indicate that while a controversy may have existed with respect to the right to use the passway, the former owner of appellees' farm continued to claim that right. Beginning in 1928 or 1929 the use of the passway was suspended for perhaps several years by reason of the fact that appellants' predecessor in title had threatened violence to those attempting to traverse it. Be that as it may, in 1931 appellees' predecessor filed suit against appellants' predecessor claiming the right to use a passway to his farm and he obtained a temporary injunction which remained in effect until a final judgment was entered in 1938. Appellees contend this judgment finally determined their rights in the passway and is binding upon appellants who purchased the property in 1937 while the suit was pending. Both parties argue at length

concerning the scope and effect of this judgment, but we do not believe appellees' claim must rest thereon.

That lawsuit and that judgment demonstrate very clearly that appellees' predecessor was insisting on a passway over appellants' land to his farm. Appellants in effect concede this, but attempt to limit the claim to a right over another passway which had been laid off in the partition suit. The record does not show that there was any controversy about such other passway and apparently it had been abandoned. We agree with the Chancellor that the controversy in that lawsuit involved the passway here in issue. Even if we accept appellants' contention that the judgment in that former suit was too indefinite to be enforceable and was not binding upon them, still it constitutes important evidence that the use of a passway was being claimed as a matter of right and it militates against appellants' contention that such use was only permissive.

As in so many cases of this sort, the record, including the testimony, is in many respects unsatisfactory. It is clear, however, that a passway to appellees' "North Field" over the land of appellants has existed and been used for the purpose of farming that parcel for almost 50 years. Such use was relatively continuous in the light of its nature and purpose. In view of the disputes which have arisen, we believe the record justifies a finding that the use was adverse and under a claim of right rather than permissive. Over this long period of time an easement has been acquired. See Rees v. Dixon, 291 Ky. 379, 164 S.W.2d 950, 143 A.L.R. 1398; Lyle v. Holman, Ky.1951, 238 S.W.2d 157. In passing we may point out that the right to use this passway is limited to the purposes served while the right was being acquired.

It is unnecessary to discuss the question of whether or not this passway is one of necessity.

The judgment is affirmed.